S. A. RIDER, Appellant, *v*. WABASH, ST. LOUIS & PACIFIC RAILWAY COMPANY, Respondent.

**January 2, 1884.**

1. COMMON CARRIERS — DAMAGES. — A railroad company which, with knowledge of its contents, takes upon a freight car, as passenger's baggage, a sample trunk containing valuable merchandise, is liable for its loss while in transit.

2. —— The company is not liable as a carrier if the passenger, finding that his trunk is too large to be put in the caboose, on his own account and responsibility, and not as a delivery to a common carrier, places it in a box car, the company having no knowledge as to the character of its contents.

3. —— EVIDENCE. — Testimony that the trunk was of a size and shape recognized by railroad men as a sample trunk is not conclusive of the company's knowledge that it was not a baggage trunk.

4. —— AGENCY. — Statements subsequently made by agents of the company who were not its agents in the transaction which involved the cause of action, are inadmissible to bind the company.

APPEAL from the St. Louis Circuit Court, ADAMS, J. *Affirmed*.

ROMBAUER & GOLDSMITH, for the appellant: The trunk was accepted as baggage for carriage. The mere receipt of it was an acceptance. — *Prewitt* v. *Han. etc., R. R. Co.*, 62 Mo. 527; *Lauder* v. *Pacific R. R. Co.*, 50 Mo. 346. The conductor was chargeable with knowledge of the nature of its contents. Whart. on Ev., sect. 1243; Whart. on Crim. Law, sect. 725. The defendant is accordingly liable for

the loss in suit. — *Ross* v. *Missouri, etc., Co.*, 4 Mo. App. 582; *Stoneman* v. *Erie Ry. Co.*, 52 N. Y. 429; *Waldron* v. *Chicago, etc., Mo.*, 1 Dak. Ter. 351; *Kuter* v. *Michigan, etc.*, 1 Biss. 35. The mere receipt of the trunk by defendant imposed on the defendant the obligation to use diligence, and rendered it liable for a loss occasioned by the gross negligence or malfeasance of its employes. — *Pennsylvania Co.* v. *Miller*, 35 Ohio St. 541; *Michigan, etc., Mo.*, v. *Carron*, 73 Ill. 348. The burden of proving diligence was on defendant. — *Kirby* v. *Adams Express Co.*, 3 Mo. App. 369; *Ketchum* v. *American, etc., Co.*, 52 Mo. 390.

Joseph Dickson, for the respondent: The articles alleged to have been lost were "samples," carried by a traveling salesman, for the purpose of enabling him to make bargains in the way of trade, and were not for the personal use, convenience, amusement, or instruction of the passenger, hence for the loss no recovery can be had in contract, nor in tort, except for gross negligence. — Thompson on Car. of Pass., 511; *Alling* v. *Boston, R. R. & M. Co.*, 126 Mass. 121; *Mich., etc., Co.* v. *Carrow*, 73 Ill. 348; *Hawkins* v. *Hoffman*, 6 Hill, 590; *Strinson* v. *Conn. R. R. Co.*, 98 Mass. 83; *Dunlap* v. *Steamboat Co.*, 98 Mass. 371; Hutch. on Carriers, sect. 685 and cases cited; *Dibble* v. *Brown*, 12 Ga. 217; *Pardee* v. *Drew*, 25 Wend. 459; *Penn. Co.* v. *Miller*, 35 Ohio, sect. 541.

Lewis, P. J., delivered the opinion of the court.

The plaintiff is a wholesale dealer in jewelry. One of his traveling salesmen, Louis Rosenfield, boarded a freight train of the defendant corporation at Mexico, Missouri, with a trunk containing valuable samples, for transportation to Sedalia, fourteen miles distant. The trunk was placed in an empty box car, which was about the third car forward of the caboose, in which the passenger rode. Upon arrival of the train at Centralia, it was discovered that the trunk had

been abstracted from the car. It was afterwards found lying beside the road, between the two stations, broken open, and despoiled of part of its proper contents. This suit is to recover the value of the articles lost. All the events mentioned occurred in the night time. A jury found for the defendant.

As to the evidence, it is sufficient to say that there was testimony tending substantially to establish the several hypotheses contained in the instructions given on either side. The instructions, taken all together, were so framed as to present to the jury the following questions of fact:

1. Did the defendant receive the trunk as a passenger's baggage, knowing at the same time, that its contents were merchandise?

2. Did Rosenfield, upon being informed by the conductor that the trunk was too large to be got into the caboose, ask for permission, and, upon his own account and responsibility, and not as an act of delivery to a common carrier, place the trunk, himself, in the box car from which it was stolen?

If the first of these questions was to be answered in the affirmative, and the second in the negative, the plaintiff should recover. If these answers were to be reversed, respectively, the verdict should be for the defendant. It seems to be conceded that these were the proper issues to be determined by the jury. The plaintiff's criticisms upon the instructions apply rather to the language than to the substance. It is not disputed that Rosenfield paid his passenger fare, and that, according to a rule applicable to freight trains, the trunk was not checked.

Let it be conceded that the defendant received the trunk as the personal baggage of the passenger. If, nevertheless, it was not personal baggage, but was a mere package of merchandize, and this fact was not known to the defendant's servants who received it, there can be no pretence that the defendant is subject to the responsibilities of a common car-

rier, for the loss of a passenger's baggage.  *Alling* v. *Railroad Mo.*, 126 Mass. 121 ; *Michigan, etc., Co.* v. *Carrow*, 73 Ill., 348.   This seems to have been fully understood by the plaintiff, who made, and still makes every possible effort to fix upon the conductor of the train a knowledge of the contents of the trunk.   The conductor, as a witness, testified positively that he did not know what were its contents, or even that it was a sample trunk.   He said further that, if he had known of the valuable articles it contained, he would have placed a man to watch it while on the train. The plaintiff meets this by testimony tending to show that the size, construction, and general appearance were of a sort peculiar to sample trunks, and so recognized among railway people.   The question is not, whether the conductor ought to have known what other people generally knew about sample trunks, but whether he did in fact know, or had information from the passenger, that this particular trunk contained valuable merchandize, and not clothing or other personal accessories of convenience to the traveller.   This question was presented as fairly as possible to the jury, and their verdict is conclusive against the conductor's knowledge, in so far, at least, as the question may be considered in this court.

Plaintiff complains that the instructions given were faulty, in that they ignored the question of liability for gross negligence or malfeasance by the defendant's servants. If any legitimate ground of recovery was omitted from the instructions, it was for the plaintiff to ask for one suited to the occasion.   It is never the court's duty, in a civil case, to give instructions that are not asked for.   The plaintiff asked for no instruction that was not given.

Objection is made to hypotheses contained in the defendant's instructions to the effect that, if " the trunk could not be placed in the caboose of said train, because it was too large to enter the door," etc., on the ground that there was no evidence to support them.   Rosenfield, in his testimony,

said: " I asked the conductor to put it (the trunk) in the caboose, and he said he could not do it, that there were no side doors." The conductor testified: " He (Rosenfield) wanted to know if I could take his trunk, and I said we could not load it, as we had no side doors in my car. Q. How are caboose cars built? A. Some have side doors, and some have not. Q. When they have no side doors, what means of entrance have they? A. Rear end doors. Q. When you said you could not take it, what did he say? A. He wanted to know if he could put it in a box car, and I told him, yes." While this testimony may not contain the exact words used in the instructions, it certainly, presents the same material facts, and no more is required to sustain a hypothetical instruction. The testimony clearly shows the existence of physical obstruction in the way of putting the trunk in the caboose, and not that it was sent to the box car from mere willfulness or negligence of the conductor. This was the only material inquiry in that connection, and the instructions submitted it to the jury in substantial accordance with the testimony. It would appear from the conductor's statements that Rosenfield himself recognized the physical difficulty or impossibility of putting the trunk in the caboose, and therefore asked leave to put it in a box car. We see no reason why the jury might not fairly infer from these facts, the case put to them in the instructions.

The court refused to allow the plaintiff to prove certain statements made by officers of the defendant in St. Louis, after the loss complained of, having reference to the circumstances of the loss. There was no error in this. Those officers were not the servants or agents of the corporation in the matter or transaction which involved the cause of complaint, and could not bind the defendant by any admissions they might make.

We think the case was fairly tried, and that nothing appears in the record to justify the demand for a reversal. All the judges concurring, the judgment is affirmed.